[No. A116433. First Dist., Div. Three. Sept. 28, 2007.]

JAMES VENHAUS, Plaintiff and Appellant, v.
KAREN SHULTZ, Defendant and Respondent.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part I. of the Discussion.

COUNSEL

Charles G. Kinney for Plaintiff and Appellant.

David B. Stromberg for Defendant and Respondent.

OPINION

**POLLAK, J.**—Plaintiff James Venhaus appeals from a judgment in favor of defendant Karen Shultz on Venhaus's claim for negligent interference with prospective economic relations. Venhaus claims that Shultz failed to provide a timely and accurate statement of the unpaid balance due on a promissory note secured by a deed of trust on real property that Venhaus was attempting to sell, interfering with two prospective sales of the property. Venhaus argues on appeal that the court erroneously denied his motion for summary adjudication, based on the ground that enforcement of the promissory note was barred by the statute of limitations, and incorrectly modified the jury instruction defining the elements of his cause of action. For reasons stated in the unpublished portion of this opinion, we conclude that summary adjudication was properly denied. As explained in the published portion of the opinion, we agree that the trial court prejudicially erred in the manner in which it modified a critical instruction. We are therefore compelled to reverse the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

The litigation arises out of Venhaus's attempt to sell an undeveloped parcel of real property on Bixler Road in Discovery Bay in Contra Costa County that was collateral under a deed of trust securing a promissory note executed by Venhaus's predecessor in interest payable to Shultz's predecessor in interest.

In 1979, Vincent and Adeline Frodsham executed a $23,000 promissory note to Stephen and Irene Kozak, secured by a deed of trust on the Bixler Road property. The note was payable in monthly installments of $247.16, with the entire balance of principal and interest to be payable on or before September 7, 1994. Both the note and deed of trust contained a due-on-sale clause under which the balance became due "at the option of the holder" upon sale of the property. The deed of trust was recorded but the promissory note was not.

In February 1985, the Frodshams conveyed the property to Venhaus. In response to a request from the title company for a statement of the condition of the loan, the Kozaks responded that the outstanding balance was $18,610.44, and included a notation indicating that title to the property could be transferred to the new owner subject to the loan, provided that the interest rate would be increased from 10 to 12 percent. Subsequently Venhaus signed a document acknowledging his receipt of the promissory note and he thereafter made a number of payments on the note in the amount of $258 each.

Stephen Kozak died in 1990 and Irene Kozak died in 2004, at which time their daughter, Shultz, became the holder of the promissory note.

In mid-2005 Venhaus attempted to sell the property. Although there is considerable disagreement concerning the facts at this point, most of the differences are irrelevant to the issues that are now before the court. Venhaus testified that he repaid the final amount due under the promissory note in about May 1993 but that for some reason a deed of reconveyance was not recorded.[1] When requested to sign a deed of reconveyance, Shultz claimed that her parents' records reflected substantial delinquencies in Venhaus's payments and an outstanding balance due on the note. According to Shultz, Venhaus promised to provide her with copies of his checks showing full payment but never did so. Venhaus claimed that he was unable to substantiate the full repayment because his records had been destroyed in a fire and he ultimately demanded a beneficiary statement from Shultz pursuant to Civil Code section 2943. He contends that Shultz failed to provide a response within 21 days of his demand, as required by section 2943, subdivision (b)(1), which prevented one prospective transaction from closing, and

---

[1] In his complaint Venhaus alleged that after making the final payment in 1994 he "neglected to get the payoff of the Kozak note confirmed by her in writing." His trial testimony seemed to indicate that he received a reconveyance of the deed of trust but failed to record it and the document was subsequently destroyed in a fire.

ultimately provided a statement claiming that the outstanding balance was considerably more than the amount due, which allegedly delayed a second transaction with adverse financial consequences to him despite the fact that the sale did close.

Shultz testified that the reason for the delay in providing the beneficial statement was that she was awaiting the promised cancelled checks from Venhaus, having told him that she would sign a deed of reconveyance if he could substantiate the fact that he had paid the full amount due under the note. The beneficial statement that she ultimately provided on October 10, 2005, reflected an unpaid balance of $69,520. Venhaus contended that this amount was intentionally excessive, and presented the testimony of a title company employee who stated that Shultz had originally made an oral demand for a payoff of $250,000. Shultz denied having made such a demand, claimed that the $69,520 she initially demanded had been calculated by her broker and an officer at the title company to include the amount of unpaid principal reflected in her parents' records plus the interest that had accrued at 12 percent per annum over the several years that the note was delinquent. At trial, she acknowledged that the unpaid balance was only $33,795.37, and explained that she had corrected the beneficiary statement as soon as Venhaus presented her with copies of several checks that had not been recorded in her parents' records.

Venhaus filed his complaint in October 2005, seeking injunctive relief and alleging a cause of action for contractual interference. The request for a preliminary injunction was denied and by the start of trial the request for injunctive relief was academic. Before trial Venhaus filed a motion for summary judgment or summary adjudication of issues, asserting that the statute of limitations on an action to foreclose the 1979 deed of trust had run both because the deed of trust contained a due-on-sale clause and the property was sold in 1985, and because by its terms the promissory note was due and payable in 1994. The court denied the motion on a variety of procedural grounds, but added a "comment on substantive issues," suggesting that the motion was also substantively deficient.

During the course of the jury trial, the court ruled that Venhaus was not entitled to instructions for interference with contractual relations—there having been no enforceable contract that was breached—but instructed the jury on both intentional and negligent interference with prospective economic relations. To instruct on the negligent interference claim, the court used Judicial Council of California Civil Jury Instructions (2006) CACI No. 2204, but apparently on its own initiative and without objection modified the

instruction, giving rise to the sole issue concerning the conduct of the trial that is raised on appeal. As discussed more fully below, the court modified the instruction to require intentional wrongful conduct to establish the negligent interference claim. The jury returned a special verdict finding that Venhaus and the buyers in the prospective transaction that failed had an economic relationship that probably would have resulted in an economic benefit to Venhaus, that Shultz knew or should have known of the relationship and that it would be disrupted if she failed to act with reasonable care, and that Shultz failed to act with reasonable care. However, the jury answered "No" to the following question: "Did [Shultz] engage in wrongful conduct through a. intentionally misrepresenting the amount owed on the loan; or b. willfully failing to submit a written payoff statement within 21 days after receiving a written demand? [¶] 'Willfully' means an intentional failure to comply without just cause or excuse?" Accordingly, the court entered judgment for Shultz, from which Venhaus has timely appealed.

DISCUSSION

I. *Summary judgment was properly denied*[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

II. *The instructions on the elements of negligent interference with prospective economic relations were prejudicially erroneous.*

Venhaus requested and, with one modification, the court gave the jury CACI No. 2204 on the elements of the cause of action for negligent interference with prospective economic advantage or, as it is called in CACI, "negligent interference with prospective economic relations." (See *Della Penna v. Toyota Motor Sales, U.S.A., Inc.* (1995) 11 Cal.4th 376, 378 [45 Cal.Rptr.2d 436, 902 P.2d 740].) This instruction, as approved by the Judicial Council, reads in full as follows:

"[*Name of plaintiff*] claims that [*name of defendant*] negligently interfered with a relationship between [him/her/it] and [*name of third party*] that probably would have resulted in an economic benefit to [*name of plaintiff*]. To establish this claim, [*name of plaintiff*] must prove all of the following:

"1. That [*name of plaintiff*] and [*name of third party*] were in an economic relationship that probably would have resulted in a future economic benefit to [*name of plaintiff*];

---

[*]See footnote, *ante*, page 1072.

"2. That [*name of defendant*] knew or should have known of this relationship;

"3. That [*name of defendant*] knew or should have known that this relationship would be disrupted if [he/she/it] failed to act with reasonable care;

"4. That [*name of defendant*] failed to act with reasonable care;

"5. That [*name of defendant*] engaged in wrongful conduct through [*insert grounds for wrongfulness, e.g., breach of contract with another, misrepresentation, fraud, violation of statute*];

"6. That the relationship was disrupted;

"7. That [*name of plaintiff*] was harmed; and

"8. That [*name of defendant*]'s wrongful conduct was a substantial factor in causing [*name of plaintiff*]'s harm." (CACI No. 2204.)

 No party challenges the correctness of this instruction. As the Sources and Authority to CACI No. 2204 indicate, it is based on, among other authority, the articulation of the tort found in *North American Chemical Co. v. Superior Court* (1997) 59 Cal.App.4th 764, 786 [69 Cal.Rptr.2d 466]: "The tort of negligent interference with prospective economic advantage is established where a plaintiff demonstrates that (1) an economic relationship existed between the plaintiff and a third party which contained a reasonably probable future economic benefit or advantage to plaintiff; (2) the defendant knew of the existence of the relationship and was aware or should have been aware that if it did not act with due care its actions would interfere with this relationship and cause plaintiff to lose in whole or in part the probable future economic benefit or advantage of the relationship; (3) the defendant was negligent; and (4) such negligence caused damage to plaintiff in that the relationship was actually interfered with or disrupted and plaintiff lost in whole or in part the economic benefits or advantage reasonably expected from the relationship."

The Directions for Use that accompany CACI No. 2204 state, "Regarding the fifth element, the judge must specifically state for the jury the conduct that the judge has determined as a matter of law would satisfy the 'wrongful conduct' standard."[3] Venhaus proposed that the fifth numbered paragraph in

---

[3] The Directions for Use for CACI No. 2204 continue: "This conduct must fall outside the privilege of fair competition. (*PMC, Inc. v. Saban Entertainment, Inc.* (1996) 45 Cal.App.4th 579, 603 [52 Cal.Rptr.2d 877]; *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*[, *supra*,] 11

the instruction be completed to read: "That the defendant engaged in wrongful conduct through: [¶] A. misrepresentation of the amount owed on the loan; or [¶] B. the failure to submit a written payoff demand within 21 days to Old Republic Title as required by Civil Code Secs. 2941 and 2943, of which she was advised by Old Republic Title."[4] However, the court modified this language to require that the misrepresentation be intentional and that the failure to comply with the Civil Code requirements be willful.[5]

The record reflects no objection by Venhaus to the court's modification of the instruction. Nonetheless, the issue is preserved for appeal despite the failure to object. (Code Civ. Proc., § 647; *National Medical Transportation Network v. Deloitte & Touche* (1998) 62 Cal.App.4th 412, 440 [72 Cal.Rptr.2d 720]; *Continental Airlines, Inc. v. McDonnell Douglas Corp.* (1989) 216 Cal.App.3d 388, 406 [264 Cal.Rptr. 779].)

■ While the trial court and Shultz are correct that a defendant incurs liability for interfering with another's prospective economic advantage only if the defendant's conduct was independently wrongful, we have been directed to no California authority, and have found none, for the trial court's conclusion that the wrongful conduct must be intentional or willful. The defendant's conduct must "fall outside the boundaries of fair competition" (*Settimo Associates v. Environ Systems, Inc.* (1993) 14 Cal.App.4th 842, 845 [17 Cal.Rptr.2d 757]; see *Della Penna v. Toyota Motor Sales, U.S.A., Inc., supra,* 11 Cal.4th 376), but negligent misconduct or the violation of a statutory obligation suffice (*North American Chemical Co. v. Superior Court, supra,* 59 Cal.App.4th at p. 786; *PMC, Inc. v. Saban Entertainment, Inc., supra,* 45 Cal.App.4th 579, 602–603, overruled on other grounds in *Korea Supply Co. v.*

---

Cal.4th [at p.] 393 [45 Cal.Rptr.2d 436, 902 P.2d 740].) The jury must then decide whether the defendant engaged in the conduct as defined by the judge. If the conduct is tortious, the judge should instruct on the elements of the tort."

[4] Because changes have been made on the copy of the proposed instruction included in the record, we cannot be certain of the complete language of the proposed instruction. It may be that in subparagraph A, a word preceded "misrepresentation," possibly "negligent," and that the proposed instruction included a third alternative. However, it is clear from the record that in subparagraph A, the court inserted the word "intentional" before "misrepresentation" and inserted the word "willfully" in subparagraph B.

[5] As given to the jury, the fifth paragraph of the instruction read: "That Karen Shultz engaged in wrongful conduct by [¶] a. intentionally misrepresenting the amount owed on the loan, or [¶] b. willfully failing to submit a written payoff statement within 21 days after receiving a written demand. Willfully means an intentional failure to comply, without just cause or excuse."

*Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1159 [131 Cal.Rptr.2d 29, 63 P.3d 937]). The approved CACI No. 2204 does not indicate otherwise and, in fact, indicates that either a misrepresentation or "violation of statute" is sufficient.

As the holder of a deed of trust against Venhaus's real property, Shultz was required by Civil Code section 2943, subdivision (b) to provide Venhaus with a beneficiary statement (as defined in § 2943, subd. (a)(2)) within 21 days of the receipt of the written demand for the statement.[6] If Shultz failed to submit such a statement in accordance with the statute, or if the statement provided was inaccurate—at least if the inaccuracy was a result of Shultz's negligence[7]—her conduct was sufficiently wrongful to support the negligent interference claim. (*North American Chemical Co. v. Superior Court, supra,* 59 Cal.App.4th at p. 786; *PMC, Inc. v. Saban Entertainment, Inc., supra,* 45 Cal.App.4th at pp. 602–603.) There is no question here whether Shultz owed a duty to Venhaus (see 5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, §§ 751–753, pp. 1086–1091), since the obligation to timely provide a correct beneficiary statement was imposed upon her by the statute.

■ The incorrect instruction was plainly prejudicial. The jury found that Shultz failed to act with reasonable care, but that her failure to comply with Civil Code section 2943 was not intentional. Had the jury been properly instructed, there is every reason to believe it would have found that she negligently failed to comply with the statute, satisfying the fifth element of the cause of action. Because the jury answered the question put to it in the negative, it did not reach the remaining questions as to whether Shultz's conduct caused a disruption of Venhaus's relationship with the first buyers and consequent damages. The parties have not addressed and we intimate no opinion concerning the sufficiency of the evidence to establish these elements. Since the jury was instructed incorrectly on the issue that proved dispositive, the case must be retried.

---

[6] There is no dispute but that the written demand upon Shultz was made by "an entitled person or his or her authorized agent," as required by Civil Code section 2943, subdivision (b)(1).

[7] We have no occasion to consider here whether an error in the amount stated to be due that was not the result of Shultz's negligence would support the cause of action. The instruction that was given required the mistake to have been intentional, which unquestionably is too stringent a standard. Nor need we consider whether Venhaus's conduct may have excused the failure to timely submit the beneficiary statement, since no such instruction was requested or given. The instructions did state that "willfully" means an intentional failure to comply "without just cause or excuse" but provided no explanation of what might constitute a just cause or excuse.

## DISPOSITION

The judgment is reversed and the matter is remanded for a new trial consistent with the views expressed in this opinion.

McGuiness, P. J., and Horner, J.,* concurred.

---

*Judge of the Alameda Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.