Filed 5/10/16  167 E. William, LLC v. Blessings CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| 167 E. WILLIAM, LLC,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DEVINE BLESSINGS et al.,<br><br>    Defendants and Appellants. | H040164<br>(Santa Clara County<br> Super. Ct. No. CV176152) |

Thomas Spielbauer is the sole shareholder of Devine Blessings, a corporation that held a second deed of trust on a property located at 167 E. William Street in San Jose, California (the Property).[1]  167 E. William, LLC (LLC) possessed a third deed of trust on the Property and acquired it after a trustee's sale.  Subsequently, LLC entered into an agreement to sell the Property to a third party and requested a payoff demand statement from Devine Blessings (Civ. Code, § 2943), estimating that the amount due on Devine Blessings' position was approximately $4,389.[2]  To LLC's surprise, Devine Blessings submitted a payoff demand of $269,500.  LLC attempted to contact Devine Blessings to ascertain the accuracy of the payoff demand but was unable to do so.  Thereafter, LLC

---

[1] Since some of the individuals in this case share the same surname, we will refer to Thomas by his first name for clarity.  Thomas and Devine Blessings are the appellants in this case.  We refer to Thomas and Devine Blessings individually when needed, and refer to them collectively as "appellants" when addressing their arguments on appeal.

[2] After the parties conducted discovery, it was determined that the actual amount due on the note was $7,152.03.

canceled the pending sale and filed a lawsuit against Devine Blessings seeking declaratory relief and damages arising from the failed sale. After a court trial, the court found that Thomas and Devine Blessings had intentionally and fraudulently inflated the payoff demand and entered a judgment in favor of LLC in the amount of $869,276.55, composed of $332,547.06 in compensatory damages, which were offset by the approximately $7,152.03 that was admittedly owed to appellants on the note, $163,597.12 in attorney fees, $40,582.37 in costs, and $332,550 in punitive damages.

Thomas and Devine Blessings have appealed the judgment, raising multiple arguments. For the reasons set forth below, we find no merit in any of their claims and affirm the judgment.

**BACKGROUND**

*Factual History*

On June 16, 2003, Curtis Mitchell loaned $350,000 to Dennis Spielbauer (the 2003 Mitchell Loan). The loan was secured by three properties, including a second position on the Property. By 2010, the other two parcels securing the loan had been sold and the total amount of indebtedness owed had been reduced to $7,152.03.

In 2007, Mitchell made another loan to Dennis for $585,000 (the 2007 Mitchell Loan). This loan was secured by three different properties located in San Jose, California. The 2007 Mitchell Loan was not secured by any of the properties securing the 2003 Mitchell Loan.

Faramarz Yazdani and his wife Afsaneh Yazdani are trustees of the Faramarz and Afsaneh Yazdani Family Trust (Yazdani Family Trust). The trust loaned Dennis $210,000 on June 25, 2008, secured by a deed of trust that was cross-collateralized on five pieces of real property, including the Property. By March 2010, the Property was the only remaining security on the loan, and the Yazdani Family Trust held a third deed of trust on the property.

Eventually, Dennis defaulted on the 2007 Mitchell Loan, and Mitchell began foreclosure proceedings. Dennis declared bankruptcy. Thereafter, a corporation called Devine Blessings, owned and controlled by Dennis' brother, Thomas, purchased the 2003 Mitchell Loan and the 2007 Mitchell Loan from Mitchell for a total of $126,000.

Thomas drafted the purchase agreement (hereafter the Mitchell Agreement) for the 2003 Mitchell Loan and the 2007 Mitchell Loan. The agreement was between "Devine Blessings and Responsible Officer Thomas Spielbauer, his heirs, executors, administrators, assigns, and agents" and Mitchell. The Mitchell Agreement further stated that the purchase of the loans was by "Thomas Spielbauer or the business entity he is an officer, director or managing member of." In exchange for purchasing the 2003 Mitchell Loan and the 2007 Mitchell Loan for $126,000, Mitchell agreed to stop the foreclosure proceedings on Dennis' home and to rescind the notice of default.

The Mitchell Agreement contained a confidentiality provision that prohibited disclosure of its terms. The Mitchell Agreement also required that Mitchell provide an itemized payoff demand. Later, Mitchell testified that Thomas insisted this requirement be crossed out. Mitchell also testified that Thomas refused to sign papers acknowledging the purchase price of each note, which would have shown that only $7,152.03 of the $126,000 purchase price was related to the Property. Concerned with Thomas' behavior during the closing, Mitchell documented the exchange he had with Thomas and had the documentation witnessed by the escrow officer, Jean Peixotto. Mitchell said that when he attempted to give Thomas documents pertaining to the two loans, including an itemized payoff demand, Thomas told him, "I don't need these." Mitchell expressed concern to Thomas that the Mitchell Agreement did not separately state the purchase price for each of the loans. Mitchell said that in response, Thomas stated: "I'm not signing them [the documents]. I have my own reasons for not signing them. I can't tell you what they are, but they do not involve you."

3

After Devine Blessings purchased the notes, the Yazdani Family Trust began foreclosure proceedings on the third deed of trust on the Property. An agent for the Yazdani Family Trust was the highest bidder at the foreclosure sale and the trust took title to the property under LLC's name, which had been newly formed. LLC took title to the Property subject to the first and second deeds of trust.

Subsequently, LLC entered into an agreement to sell the Property to a third party and requested a payoff demand for the 2003 Mitchell Loan from Devine Blessings under Civil Code section 2943. Although only $7,152.03 of indebtedness remained, Devine Blessings submitted a payoff demand totaling $269,500.[3] Devine Blessings asserted that the principal balance owed was $126,000, and that an additional $143,500 was owed for "other." During the ensuing litigation, Thomas asserted that the Mitchell Note had been modified, and that the attorney fees that he had accrued while performing legal work for his brother had been added to the note.[4] Thomas claimed that his brother had agreed to modify the deed of trust securing the property for the additional amounts.

On May 20, 2010, LLC requested an explanation or a revision of the payoff demand. A week later, LLC, through counsel, contacted Devine Blessings a second time seeking clarification of the payoff demand. LLC warned Devine Blessings that it was risking a civil action for tortious interference, because the payoff demand was jeopardizing the sale of the Property. Thomas responded to the second communication but asserted that he did not have time to adequately investigate the accuracy of the payoff demand he had submitted. Subsequently, LLC canceled the agreement to sell the Property.

---

[3] Initially, LLC alleged that the total amount due on the note was $4,389.16.

[4] Thomas is a member of the California State Bar and has been an attorney for over 30 years. He has a specialty civil practice focusing on foreclosure law, which began in 2005.

*Procedural History*

On July 6, 2010, LLC filed a complaint against Devine Blessings, seeking a declaration regarding the validity of Devine Blessings' payoff demand.

The following year, LLC filed a second amended complaint seeking declaratory relief and alleging causes of action for intentional interference with economic advantage, negligent interference with economic relations, and violations of Civil Code section 2943. Devine Blessings filed a cross-complaint requesting a judicial foreclosure. Devine Blessings also alleged causes of action for rent skimming, unfair business practices, and fraud.

In April 2013, the matter proceeded to a court trial after both parties waived jury trial. Two days into the court trial, the court announced its ruling on LLC's first cause of action for declaratory relief, finding that Devine Blessings' payoff demand was inaccurate. Instead of $269,500, the payoff demand should have been $7,152.03. On May 24, 2013, the second phase of the court trial began on the issue of the proper amount of punitive damages. During trial, the court allowed LLC's expert witness, Charles Hansen, to testify about various subjects, including several federal cases that Thomas was involved in and Thomas's law firm Web site advertising that he is a foreclosure specialist.

On August 27, 2013, the court issued a statement of decision following the court trial. First, the court allowed LLC to amend its complaint to allege a new cause of action for slander of title. It then concluded that plaintiffs had established all the elements of slander of title and intentional and negligent interference with prospective advantage. The court also concluded, by clear and convincing evidence, that Devine Blessings' acts were fraudulent within the meaning of Civil Code section 3294, subdivision (c)(3). The court awarded LLC compensatory damages in the amount of approximately $332,547.06

for the cause of action for slander of title. The trial court also awarded LLC $300 for the violation of Civil Code section 2943.

The court further found that punitive damages in the amount of $332,550, an amount approximately equivalent to the compensatory damages awarded, was appropriate. The court determined that Thomas had provided incomplete financial documentation and monthly statements from his bank indicated that he received income higher than reported.

Following the trial, LLC requested attorney fees, which the trial court granted. On February 14, 2014, the trial court entered a judgment in favor of LLC in the amount of $869,276.55, composed of $536,726.55 in attorney fees and $332,550 in punitive damages.

## DISCUSSION

Appellants raise multiple arguments on appeal, including: (1) appellants were deprived of a fair trial when the trial court allowed LLC to amend its complaint to allege a cause of action for slander of title, (2) the trial court erred when it permitted LLC's expert witness to testify on undisclosed matters, (3) the payoff demand was privileged under Civil Code sections 2943, 2924, and 47, (4) the trial court erred in finding that LLC had established slander of title, (5) Civil Code section 2943 does not require an accurate payoff demand, (6) as the holder of the senior lien, Devine Blessings was allowed to modify its note without notice to the junior lienholders, including LLC, (7) the action for declaratory relief on the accuracy of the payoff demand was mooted when the agreement to sell the Property was terminated, (8) LLC lacked standing to sue since it was not the purchaser of the Property and title to the Property was never transferred to LLC, and (9) the trial court exceeded its jurisdiction when it ordered the Property's title be conveyed as part of its final judgment.

6

1. *Standard of Review*

Before we address the merits of appellants' claims we briefly review the general standard of review on appeal. On appeal, " '[a] judgment or order of the lower court is presumed correct. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown. This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.' " (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564, italics omitted.) We review a court's factual findings for substantial evidence. (*Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 630-631.) However, we review any purely legal issues de novo. (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799-801.)

2. *The Amendment to the Complaint*

a. **The Trial Court did not Abuse its Discretion by Allowing the Amendment**

The second amended complaint filed by LLC did not have a cause of action for slander of title. After the parties waived jury trial, the matter proceeded to a court trial in April 2013. On the second day of the court trial, LLC moved to amend its complaint to conform to proof to include a cause of action for slander of title. The trial court entertained briefing and argument from the parties on the proposed amendment, but it did not expressly rule on the amendment until it submitted its statement of decision in August 2013. In its statement of decision, the trial court concluded that the amendment would not prejudice appellants and granted LLC's request. Appellants now claim that the trial court abused its discretion.

" 'Code of Civil Procedure section 473, subdivision (a)(1) permits a court, "in furtherance of justice," to "allow a party to amend any pleading . . . in any . . . respect." The trial court's ruling on a motion to amend a pleading is reviewed under an abuse of discretion standard . . . , and the appellant has the burden of establishing its discretion was abused.' " (*Duchrow v. Forrest* (2013) 215 Cal.App.4th 1359, 1377 (*Duchrow*).)

7

A trial court can liberally permit amendments, even during trial, if there is no prejudice to the opposing party. (*P&D Consultants*, *Inc*. *v*. *City of Carlsbad* (2010) 190 Cal.App.4th 1332, 1345.) However, unwarranted delay in presenting the amendment may be sufficient cause for a denial. (*Ibid*.)

"[Code of Civil Procedure] [s]ection 469 specifically governs motions to amend at trial to conform to proof, which was the basis for the trial court's order in the present case. Section 469 provides in relevant part as follows: 'No variance between the allegation in a pleading and the proof is to be deemed material, unless it has actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits.' Such amendments at trial to conform to proof, 'if not prejudicial, are favored since their purpose is to do justice and avoid further useless litigation.' " (*Garcia v*. *Roberts* (2009) 173 Cal.App.4th 900, 909.)

A trial court abuses its discretion in permitting an amendment if the amendment presents new and substantially different issues that the opposing party has no opportunity to defend, or if the rights of the opposing party were prejudiced by the amendment. (*Trafton v*. *Youngblood* (1968) 69 Cal.2d 17, 31.) The trial court is guided by three general principles: whether there is a reasonable excuse for the delay, whether the amendment relates to the facts alleged or only to the legal theories, and whether prejudice would result. (*Duchrow*, *supra*, 215 Cal.App.4th at pp. 1378-1379.) "If new facts are being alleged, prejudice may easily result because of the inability of the other party to investigate the validity of the factual allegations while engaged in trial or to call rebuttal witnesses. If the same set of facts supports merely a different theory—for example, an easement as opposed to a fee—no prejudice can result." (*City of Stanton v*. *Cox* (1989) 207 Cal.App.3d 1557, 1563.) " 'The basic rule applicable to amendments to conform to proof is that the amended pleading must be based upon the same general set of facts as

those upon which the cause of action or defense as originally pleaded was grounded.' " (*Garcia v. Roberts*, *supra*, 173 Cal.App.4th at p. 910.)

Below, LLC did not explain why it delayed in amending its complaint. Nor does LLC offer a reason for the delay on appeal. However, simply because LLC failed to give a reason for its delay does not necessarily mean that the trial court abused its discretion in granting the amendment. The trial court may not have abused its discretion if the cause of action for slander of title was based on the same operative facts alleged in LLC's other causes of action. Based on the elements of the offense and LLC's proposed amendment to the complaint, we conclude that no abuse of discretion occurred.

The elements of an action for slander of title (or disparagement of title) are: (1) publication of a statement that disparages title to a property, (2) absence of justification, (3) falsity, and (4) direct pecuniary loss. (*Truck Ins. Exchange v. Bennett* (1997) 53 Cal.App.4th 75, 84.)

The facts underlying these elements were subsumed within LLC's second amended complaint. The publication occurred when Devine Blessings submitted the payoff demand, which is the root of all of LLC's claims against Devine Blessings. The falsity and absence of justification for the payoff demand were alleged in LLC's other causes of action, such as its cause of action for intentional interference with economic advantage. In its interference claim, LLC alleged that appellants intentionally misrepresented the amount that was owed on the note and submitted an inaccurate payoff demand.

Lastly, in its proposed amendment LLC alleged that it suffered pecuniary loss when it had to cancel the third party sale and that it continued to suffer losses since the false payoff demand had serious negative impacts on its future ability to sell and market the property. The element of direct pecuniary loss stemming from the failed sale was raised in LLC's interference claim.

9

We do find that the second element of loss alleged by LLC—impacts on future vendability and marketability of the Property—was not particularly well-articulated in the second amended complaint. LLC, however, notes that its cause of action for declaratory relief alleged that relief was necessary because it would allow LLC to sell the Property and lessen the burden of alienation on the property caused by appellants.[5]

Based on the foregoing, we do not believe the trial court abused its discretion when it allowed LLC to amend its complaint. It does not exceed the bounds of all reason to conclude that adding the cause of action for slander of title would not prejudicially mislead appellants.[6]

b. **Appellants Fail to Demonstrate Prejudice**

Additionally, even if the trial court erred in amending the complaint, appellants have failed to demonstrate they were prejudiced by the amendment.

Appellants remark in their opening brief that "[t]he burden is on the party seeking the amendment ([LLC]) to show a lack of prejudice as well as to show diligence in bringing the amendment." Regardless, on *appeal*, the burden is on *appellants* to show they were prejudiced by the alleged errors in the trial court's judgment. "Prejudice is not presumed, and the burden is on the appealing party to demonstrate that a miscarriage of justice has occurred." (*Waller v. TJD, Inc.* (1993) 12 Cal.App.4th 830, 833; Code Civ.

_____

[5] Additionally, the impacts of the payoff demand on LLC's ability to sell the Property was raised by the parties below. For example, LLC alleged in its opposition to appellants' motion for summary judgment that the damages it suffered would "significantly exceed" the amount lost due to the canceled sale, because the damages would be "measured by the carrying costs associated with being unable to sell the Subject Property, even today, over two years after it entered into a contract to sell the Subject Property."

[6] We note that it is immaterial whether we would have concluded, if we were presented with the issue in the first instance like the trial court, that amending the complaint was proper. (*Branick v. Downey Savings & Loan Assn.* (2006) 39 Cal.4th 235, 242.)

10

Proc., § 475.) To establish prejudice, appellants must show that it is reasonably probable they would have reached a more favorable result absent the error. (*Villano v. Waterman Convalescent Hospital, Inc.* (2010) 181 Cal.App.4th 1189, 1200.)

Appellants claim that this case is similar to *Duchrow*, where the appellate court concluded that the trial court abused its discretion when it allowed a mid-trial amendment to the complaint. In *Duchrow*, the plaintiff, an attorney, filed a lawsuit against his former client alleging a breach of the parties' retainer agreement. (*Duchrow*, *supra*, 215 Cal.App.4th at p. 1362.) The complaint alleged that the plaintiff was entitled to a " 'combined hourly and contingency based rate' " and was also entitled to costs. (*Ibid.*) Mid-trial, the plaintiff moved to amend its complaint to allege a new theory of liability based on a paragraph of the retainer agreement that was not mentioned in the complaint. (*Ibid.*) Under this different paragraph, the plaintiff argued that he would be entitled to " 'all time spent' " on the prior case, because he had withdrawn for good cause. (*Ibid.*)

On appeal, the defendant argued the court abused its discretion when it permitted the amendment, and the appellate court agreed. (*Duchrow*, *supra*, 215 Cal.App.4th at p. 1363.) First, the appellate court noted that the plaintiff did not proffer any reason for his delay in seeking an amendment. Second, the court concluded that the mid-trial amendment created a theory of liability that hinged on whether the plaintiff had withdrawn from defendant's case for good cause and also raised new factual conflicts over the amount of time the plaintiff had spent on defendant's case. (*Id.* at p. 1380.) These were all new facts that were not raised in the original pleadings. Lastly, the court concluded that the defendant had suffered prejudice in multiple ways. (*Id.* at pp. 1381-1382.) For example, the defendant could have researched whether the paragraph in the retainer agreement was enforceable, called an expert witness to testify about whether the amount of fees the plaintiff sought was reasonable, and conducted more discovery to determine how many hours the defendant had actually spent on the

11

case. Additionally, it would have given the defendant cause to seriously consider settling the case or accepting the plaintiff's offer of compromise. (*Ibid*.) Accordingly, the appellate court reversed the trial court's judgment.

*Duchrow*, however, concerned an amendment to a complaint that raised new *facts*, not a new legal issue. Although LLC failed to explain why it delayed in bringing the amendment, the cause of action for slander of title rested on facts that were already pleaded in the original complaint. Additionally, appellants spent the majority of its opposition to the amendment below attacking the substantive merits of the claim on the same grounds it attacked the merits of LLC's other causes of action, including by arguing that LLC lacked standing to bring an action since it was not the lawful purchaser at the trustee's sale and that the payoff demand was privileged under Civil Code sections 47 and 2924, subdivision (d).[7] Appellants' claim that the addition of the cause of action prejudiced them because they would have conducted further discovery is unavailing.[8]

We also reject appellants' claim that prejudice resulted from the amendment, because the cause of action for slander of title alone subjected them to punitive damages.

---

[7] Appellants briefed both of these issues in a motion for a judgment on the pleadings.

[8] For example, appellants contend in their opening brief that they would have conducted further discovery on the amount of attorney fees that LLC had expended. LLC, however, already prayed for attorney fees for their first cause of action for declaratory relief. Appellants also claim that they would have further deposed LLC's expert witness, Charles Hansen, on the slander of title issue. But since the operative facts of the slander of title claim were already subsumed in the other causes of action, we do not see how further deposition would have aided appellants' claims. Appellants also argue that they would have provided more character witnesses, including former clients, to testify regarding Thomas' good character. It is unclear how introduction of favorable character testimony would specifically target a slander of title claim. To the extent this type of evidence would have been a part of appellants' defense that they did not send a fraudulently inflated payoff demand, the issue of whether the payoff demand was fraudulent was already raised in LLC's other causes of action.

Appellants cite to *Venhaus v. Shultz* (2007) 155 Cal.App.4th 1072 (*Venhaus*) for the proposition that damages for intentional and negligent interference with prospective economic advantage claims are severely limited and cannot include punitive damages. We find appellants' reliance on *Venhaus* misplaced.

*Venhaus* did not discuss damages at all. In *Venhaus*, the plaintiff filed a lawsuit against the defendant for injunctive relief and contractual interference after the defendant submitted an inaccurate payoff demand under Civil Code section 2943. (*Venhaus*, *supra*, 155 Cal.App.4th at pp. 1076-1077.) The sole issue discussed in *Venhaus* was whether the trial court erred when it instructed the jury that intentional wrongful conduct was required to establish a claim of negligent interference. (*Ibid*.) *Venhaus* concluded that the trial court's instruction was erroneous and plainly prejudicial. (*Id*. at p. 1080.) Nowhere in *Venhaus* does the appellate court discuss the appropriateness of awarding damages in an interference claim.

Their misplaced reliance on *Venhaus* aside, appellants are also mistaken that the cause of action for slander of title alone subjected them to punitive damages.[9] LLC requested punitive damages in its causes of action for intentional interference with a prospective economic advantage. In the intentional interference claim, LLC specifically alleged that appellants were willful, fraudulent, oppressive, and malicious. Punitive damages are expressly allowed in "an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant[s] [have] been guilty of oppression, fraud, or malice . . . ." (Civ. Code, § 3294, subd. (a).)

---

[9] Appellants assert that the punitive damages and attorney fees were awarded solely on the fifth cause of action for slander of title. In fact, in appellants' motion for a new trial, they indicated that they had prevailed on both interference claims. We disagree with appellants' assessment of the judgment. In the trial court's statement of decision, the court expressly stated that LLC had "established all the elements for intentional and negligent interference with prospective advantage."

13

In its statement of decision, the trial court found that LLC had established its claim of intentional interference and also found that appellants' acts were fraudulent within the meaning of Civil Code section 3294. Appellants would have been subjected to punitive damages even without the addition of the slander of title claim.

Similarly, we find no merit in appellants' argument that the cause of action for slander of title alone subjected them to attorney fees and costs. Below, LLC brought a motion seeking posttrial attorney fees incurred after the court submitted its tentative decision. LLC noted that the trial court had awarded it compensatory damages for the slander of title claim, which constituted the attorney fees and costs it had incurred to clear title. LLC, however, argued that an award of posttrial attorney fees was appropriate under Civil Code section 1717, because its cause of action for declaratory relief was based on the deed of trust securing the 2003 Mitchell Loan, which provided for attorney fees. LLC also insisted that costs were appropriate under Code of Civil Procedure section 998. The trial court agreed with LLC's arguments, finding that it was entitled to both attorney fees and costs. Thus, even in the absence of the slander of title claim, LLC would have been entitled to attorney fees.[10]

For all the aforementioned reasons, appellants fail to demonstrate prejudice.

3. *Expert Witness's Testimony*

Charles Hansen, LLC's expert witness, testified about various issues at trial, including Thomas's reputation as an attorney and information contained on Thomas's Web site promoting his legal practice. Appellants argue that Hansen's testimony covered corollary issues that were not previously identified in his expert witness disclosure or his deposition.

---

[10] Appellants do not argue that the trial court erred in granting LLC's request for posttrial attorney fees and costs.

14

a. **LLC's Expert Witness Disclosure**

Pursuant to Code of Civil Procedure section 2034.260, LLC submitted an expert witness disclosure identifying Hansen. LLC also provided a disclosure summarizing that Hansen would be testifying "regarding liability issues for the failure to issue a proper payoff demand pursuant to Civil Code section 2943, as well as the standard of care regarding payoff demands in general. He will testify regarding industry practice involving collateralized notes and secured instruments in general, as well as the concept of a 'dragnet clause' and its application."

b. **Hansen's Deposition**

Appellants deposed Hansen on March 20, 2013. During the deposition, appellants asked Hansen whether he had been asked to render any opinions regarding the Property's foreclosure. Hansen replied that he believed his testimony would fall under the category of "color commentary, or background," meaning that he understood that he may be asked to describe basic issues like the difference between a deed of trust and a mortgage, how a foreclosure works, and the mechanics of bidding at a foreclosure sale.

Hansen then provided an overview of topics he had discussed with LLC's counsel. One subject area included Hansen's opinion on the use of an undisclosed principle to acquire property at a foreclosure sale. Hansen stated that it was his opinion that there was "nothing wrong" with using an undisclosed principle.[11] Appellants also asked Hansen about bid chilling, flip sales, and whether recouping a windfall at a foreclosure sale could be considered repugnant.

---

[11] Below, appellants had argued that the process by which LLC obtained title to the Property was potentially fraudulent. Appellants claimed that LLC had its agent bid on the property and took title under the name of the new corporation in an attempt to hide the fact that they had purchased the property in order to gain the protections given to a bona fide purchaser for value at a trustee's sale.

15

On the subject of payoff demands, Hansen commented that "if [payoff demands are] not done in the customary fashion . . . , [they] screw up the right of redemption . . . refusing to give a correct payoff demand is a fundamental subversion of the fundamental right of a mortgage borrower, which is to know what it's going to take to pay off that loan." Appellants' counsel then asked Hansen how one determines a "right" payoff demand, and Hansen answered that a payoff demand is determined by looking at the loan documents objectively. Appellants asked Hansen if the purchaser of a note can substitute the amount he paid for the deed of trust as the principal amount due on the note. Hansen answered that the purchaser cannot do so, because the purchaser is buying a "fixed set of rights, which were created when the loan documents were signed. . . . [¶] And when you buy the creditor's position in a secured transaction, you're buying a set of rights that don't vary with how much you paid for it."

Appellants' counsel then asked Hansen whether it was possible to modify the note. Hansen answered that to modify the note, one would need to involve the original borrower. Hansen also asserted that typically, if modification of the note resulted in an increased debt, the result would be that the new owner of the note would lose priority over the junior interests.

Hansen then opined that when modifying a debt, "[the parties] can't fake it. They can't just say all of a sudden the debt is three times what it was without the actual advancing of money. And they can't do it in a way that's designed to disadvantage any third party." Appellants' counsel asked Hansen if anybody had suggested to him that the amount that was added to the note by Thomas was not actually paid to benefit his brother, Dennis. Hansen replied, "People have said things to me that I would interpret as suggesting that [the modification] was hooey. And the thing that I have in mind are the failure to respond about what is this payoff demand, and how did you get those numbers? Are they additive, or is one a subset of the other? [¶] And I did read [Thomas's]

16

deposition in which I kept waiting for an explanation of what that was, and never felt I saw it, or got it. [¶] All of that would lead me to conclude that it was not the result of some documented process of expenditure in connection with that loan trans, that secured loan." Hansen also stated that he did not believe that the note did not contain a dragnet clause that would allow Thomas to add on additional debt to the amount of the note, even if it was legitimate.

Towards the end of the deposition, appellants' attorney asked Hansen if he had been asked to render any other opinions. In response, Hansen stated that he was not asked to "render any opinions." Rather, Hansen asserted that LLC's counsel had requested that he review documents and answer questions. Hansen then summarized the main subject areas that he had reviewed with LLC's counsel, including: (1) whether a creditor can put "whatever he wants in a beneficiary statement or a payoff demand, or does it have to be a good faith attempt to describe the loan secured by that deed of trust," (2) the right of redemption, (3) whether use of an undisclosed principle was wrong, (4) bidding at a foreclosure sale and new entities, (5) whether changing the terms of a deal being escrowed would somehow invalidate or justify an improper payoff demand or beneficiary statement, (6) dragnet clauses, and (7) whether Civil Code section 2943 only requires a timely payoff demand, not an accurate payoff demand.

Regarding the last issue, Hansen asserted that he believed that "if [the argument that Civil Code section 2943 does not require an accurate payoff demand] has been made, it's a silly argument; that it doesn't do you any good to get a timely, incorrect and bad faith payoff demand."

c. **Hansen's Testimony and Appellants' Objection**

During trial, Hansen testified as an expert on real estate lending and foreclosures. LLC sought to question Hansen regarding his knowledge of Thomas's reputation as an attorney and some of "his activities as an attorney [that have] been discussed in certain

17

publicly available federal court decisions, concerning various mortgage or trustee scams." LLC stated that it was offering the evidence to prove Thomas's knowledge. Specifically, that Thomas had willfully submitted a false payoff demand. Appellants objected to Hansen's testimony as improper character evidence. (Evid. Code, § 1101.) Appellants also argued that the testimony should not be allowed because this subject had not been sufficiently disclosed in the expert witness disclosure or the deposition.

The trial court overruled appellants' objection, holding that Hansen's deposition sufficiently disclosed that he would be giving an opinion on these matters. The trial court concluded: "So I think the depo does disclose Mr. Hansen giving an opinion that the statutory argument by the [appellants] could not be made in good faith, the reference to 'bad faith' in the portions of the deposition that are identified for me. I think that is enough to fairly disclose that an opinion would be rendered on whether the argument could be made in good faith. [¶] The fact that there's no reference to reputation misses the point. It's about whether the argument could be made in good faith, and it does not appear that there was inquiry about those documents relating to that opinion. So I'm overruling the objection and allowing Mr. Hansen to state that opinion."

Following the court's ruling, Hansen opined that it was his belief that "no knowledgeable lawyer in the field of mortgages, in deeds of trust, could have believed or argued in good faith that the additions to the—or the alleged additions to the debt, as disclosed in the payoff demand statement, no one could have believed that was plausible or colorable or arguable. It was beyond the pale."

Hansen also testified that based on the information Thomas had prepared on his Web site, he believed that Thomas was knowledgeable in the field of mortgages and deeds of trusts. LLC's counsel then submitted several exhibits, consisting of print outs and screenshots of documents obtained from Thomas's Web site. One of the screenshots included the main page of Thomas's Web site that declared him to be "[t]he gold

18

standard in stopping foreclosure," advertising that he offered "preeminent, legal representation; comprehensive foreclosure defense."

    d.  **Standard of Review and Overview of Expert Witness Disclosures**

We review a trial court's ruling on the admissibility of expert witness testimony for an abuse of discretion. (*Easterby v. Clark* (2009) 171 Cal.App.4th 772, 778.)

Code of Civil Procedure section 2034.210, subdivision (a) provides that any party can demand a "mutual and simultaneous exchange by all parties of a list containing the name and address of any" expert witness expected to testify at trial. " ' "[T]he general substance of the testimony which the witness is expected to give" must be disclosed upon proper request. As interpreted by the California courts, this requires a party to "disclose the *substance* of the facts and the opinions to which the expert will testify, either in his witness exchange list, or in his deposition, or both." ' " (*Easterby v. Clark*, *supra*, 171 Cal.App.4th at p. 778.)

"When an expert deponent testifies as to specific opinions and affirmatively states those are the only opinions he intends to offer at trial, it would be grossly unfair and prejudicial to permit the expert to offer additional opinions at trial." (*Jones v. Moore* (2000) 80 Cal.App.4th 557, 565.) "[A] party's expert may not offer testimony at trial that exceeds the scope of his deposition testimony *if* the opposing party has no notice or expectation that the expert will offer the new testimony." (*Easterby v. Clark*, *supra*, 171 Cal.App.4th at p. 780.)

    e.  **Analysis**

We find the trial court did not abuse its discretion when it admitted Hansen's expert witness testimony. The issues of whether the payoff demand was submitted in good faith and whether it amounted to slander of title were adequately raised in the deposition and in LLC's expert witness disclosure.

We note that appellants' claim has some merit. Hansen's statements during the deposition do not clearly allude to all of the subject matters he eventually testified to during the trial. For example, appellants asked Hansen during the deposition if he had been asked to render any other opinions for the trial. Hansen responded that he was not asked to "render any opinions," but then went on to summarize approximately seven different topics he had discussed with LLC's counsel. Hansen's response to appellants' query can readily be interpreted as an indication that he would not be offering any other opinions at trial. Further, Hansen did not clearly state that he was going to offer the opinion that the payoff demand was made in good faith, or that he had knowledge or opinions of Thomas's reputation as an attorney.

However, LLC's expert witness disclosure asserted that Hansen would be testifying regarding the standard of care regarding payoff demands and liability issues arising from failing to issue a proper payoff demand. The statements offered by Hansen during the trial—that an experienced attorney in the field of foreclosures and mortgages could not have argued in good faith that the additions to the note were proper—were part of Hansen's opinion regarding the standard of care needed when issuing a payoff demand and the liability that may arise from submitting an inaccurate one. Hansen's testimony regarding Thomas's Web site and the publicly available federal court cases involving Thomas were related to whether Thomas, on behalf of Devine Blessings, had intentionally submitted a false payoff demand. In order to prove a violation of Civil Code section 2943, subdivision (e)(4), LLC had to show that Thomas acted willfully.

Hansen's deposition also provided disclosure of the substance of his testimony at trial. During his deposition, Hansen stated that others had suggested to him that the additional amount added to the 2003 Mitchell Note was "hooey." And he had personally reviewed Thomas's deposition and did not believe that Thomas adequately explained or identified how he had reached the number that he eventually added to the amount that

20

was due on the note. During the deposition, appellants did not ask Hansen how he reached this opinion. (*Kennemur v. State of California* (1982) 133 Cal.App.3d 907, 919 ["the party must disclose either in his witness exchange list or at his expert's deposition, *if the expert is asked*, the substance of the facts and the opinions which the expert will testify to at trial" (italics added)].) Hansen's testimony at trial can be construed as "an expanded description and interpretation of the conclusions stated in his deposition testimony." (*DePalma v. Rodriguez* (2007) 151 Cal.App.4th 159, 165.) Such testimony was not improper.

Appellants claim that *Bonds v. Roy* (1999) 20 Cal.4th 140 is analogous to the present case. We disagree. *Bonds* was a medical malpractice case. There, the defendant disclosed that his expert witness was going to testify about the plaintiff's disability. (*Id.* at pp. 142-143.) During trial, defendant sought to instead have the expert testify on standard of care. (*Id.* at p. 143.) Finding that this was completely out of the scope of the expert witness's declaration, the court did not permit the testimony, and the Supreme Court affirmed. (*Id.* at pp. 148-149.)

Here, we find that Hansen's testimony at trial was adequately described in LLC's expert witness disclosure and through Hansen's statements at his deposition. Accordingly, *Bonds* is inapplicable. We therefore conclude that the trial court did not abuse its discretion when it admitted Hansen's testimony.[12]

_____

[12] In their reply brief, appellants claim that Hansen's testimony was also erroneous, because an expert cannot testify regarding the meaning of statutes. Appellants also argue, in their reply brief, that Hansen "used the wrong standard in evaluating the conduct of [Thomas]." However, these claims were not raised in appellants' opening brief. "Points raised for the first time in a reply brief will ordinarily not be considered, because such consideration would deprive the respondent of an opportunity to counter the argument." (*American Drug Stores, Inc. v. Stroh* (1992) 10 Cal.App.4th 1446, 1453.) Accordingly, we decline to consider these additional arguments.

Additionally, we note that we are not entirely convinced that the trial court's stated reasons for allowing Hansen's testimony was correct. However, the general rule is that
(continued)

21

4. *Waiver of the Jury Trial*

Appellants argue that had they known that LLC would amend its complaint to allege a cause of action for slander of title, they would not have waived their right to a jury trial.

LLC argues that appellants have waived this issue for failure to raise it below. "Under the doctrine of waiver, a party loses the right to appeal an issue caused by affirmative conduct or by failing to take the proper steps at trial to avoid or correct the error." (*Telles Transport, Inc. v. Workers' Comp. Appeals Bd.* (2001) 92 Cal.App.4th 1159, 1167.) Appellants, after entering their initial jury waiver, never requested that they be allowed to withdraw their waiver even after LLC sought to amend its complaint mid-trial. Appellants note that it submitted a motion for a new trial after the court issued its tentative statement of decision when it granted LLC's request to amend the complaint, but appellants' new trial motion does not argue that a new trial is necessary to allow for a jury to decide the merits of the issues.[13] No mention of the right to a jury trial was made below. Accordingly, we find appellants' arguments pertaining to the waiver of their right to a jury trial to be waived.

Furthermore, even if the argument was not waived, we do not believe that appellants have met their burden to demonstrate prejudicial error requiring reversal. The trial court has the discretion to allow a party to withdraw its waiver of a jury trial. (*Gonzales v. Nork* (1978) 20 Cal.3d 500, 506-507.) "In exercising its discretion, a trial

---

" 'a ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason. If right upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion.' " (*D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 19.) We review only the propriety of the trial court's admission of Hansen's testimony, not its reasoning in doing so.

[13] Later, appellants withdrew their motion for a new trial and agreed that it would be construed as an objection to the statement of decision.

court may consider diverse factors: '[D]elay in rescheduling the trial for jury, lack of funds, timeliness of the request and prejudice to the litigants.' [Citations.] The court may also consider, 'prejudice to . . . the court, or its calendar' [citation], the reason for the demand, i.e., whether it is merely a 'pretext to obtain continuances and thus trifle with justice' [citation], whether the parties seeking the jury trial will be prejudiced by the court's denial of relief [citation] and whether the other parties to the action desire a jury trial." (*Day v. Rosenthal* (1985) 170 Cal.App.3d 1125, 1176.)

"The applicable rule is that an amended pleading, even though it may present a new issue, does not have the effect of restoring one's constitutional right to a trial by jury which has previously been waived. [Citations.] It is true that Code of Civil Procedure, section 631, [subdivision (g)], permits a court in its discretion to allow a trial by jury where there has been waiver of such trial, but it does not compel a court to do so and no relief can be obtained on appeal unless the trial court grossly abused its discretion." (*Hayden v. Friedman* (1961) 190 Cal.App.2d 409, 411-412.) Additionally, "[p]rejudice cannot be presumed from the fact that appellant's case was tried before a judge instead of a jury; on the contrary, it is presumed that the trial was fair and impartial." (*Id.* at p. 412.)

Appellants argue in their reply brief that denial of the right to a jury trial is reversible error per se, citing *Martin v. County of Los Angeles* (1996) 51 Cal.App.4th 688. *Martin*, however, concerned the denial of the right to a jury trial in the first instance. The situation contemplated here is more akin to a trial court's denial of relief to a party who has already waived his or her right to a jury trial. *Martin*, in finding that denial of right to a jury trial is reversible error per se, distinguished cases where a trial court refused to permit a party to withdraw its waiver of a jury trial. (*Id.* at p. 698.)

Appellants have not demonstrated they were prejudiced because they did not receive a jury trial. Accordingly, their argument on appeal must fail.

5. *Slander of Title*

a. **Sufficient Evidence of Slander of Title**

Appellants claim that there was insufficient evidence of slander of title. As we previously noted, the elements of an action for slander of title (or disparagement of title) are: (1) publication of a statement that disparages title to a property, (2) absence of justification, (3) falsity, and (4) direct pecuniary loss. (*Truck Ins. Exchange v. Bennett*, *supra*, 53 Cal.App.4th at p. 84.)

i. *Publication of a Disparaging Statement*

Appellants argue that a defamatory statement was not published, because there is no "publication" if the statement is only communicated to the plaintiff.

Appellants are correct that a cause of action for slander of title requires that the offending statement be published to a third person. (*Truck Ins. Exchange v. Bennett*, *supra*, 53 Cal.App.4th at p. 84.) However, LLC alleged that publication occurred when the payoff demand was given to the escrow company handling the sale of the property. The escrow company and its agents are not the plaintiffs to this cause of action. They are a third party. There is no requirement that the plaintiff prove that there was publication to a third person *purchaser* who is interested in buying the property.

Appellants also insist that the payoff demand was not one that disparaged the title of the property. The disparagement element of a slander of title claim requires that a statement or action "cast[s] doubt upon the existence or extent of another's interest in land." (*Sumner Hill Homeowners' Assn., Inc. v. Rio Mesa Holdings, LLC* (2012) 205 Cal.App.4th 999, 1030 (*Sumner Hill*).)

Appellants claim that a payoff demand is not a "cloud" upon a title and cannot disparage LLC's ownership, because it is a temporary statement that is not recorded. Nonetheless, a cause of action for slander of title does not require that the published statement have any actual legal effect. " '[P]rotection from injury to the salability of

24

property is the thrust of the tort [of slander of title].' [Citation.] Therefore, the key to whether [a] defendant's conduct is actionable is not whether he has succeeded in casting a legal cloud on the plaintiff's title, but whether he could reasonably foresee that 'the conduct of a third person as purchase or lessee [of the property] *might be determined thereby. . . .*' " (*Seeley v. Seymour* (1987) 190 Cal.App.3d 844, 858 (*Seeley*).)

Appellants rely on *Smith v. Commonwealth Land Title Ins. Co.* (1986) 177 Cal.App.3d 625. The plaintiffs in *Smith* filed a lawsuit alleging slander of title against a title insurance company that had insured that other loans were senior to the plaintiffs' deed of trust. (*Id.* at p. 628.) The appellate court affirmed the trial court's order sustaining a demurrer against the plaintiffs, holding that "a title insurance policy does not constitute a 'publication.' It is a contract to indemnify against loss caused by defects in the title or encumbrances on the title. It is not a representation that the title is in any particular condition." (*Id.* at p. 631.)

*Smith*, however, is distinguishable. Unlike a title insurance policy, the inflated payoff demand is one that appellants "could well anticipate might chill the enthusiasm of any prospective purchaser of [LLC's] property." (*Seeley, supra*, 190 Cal.App.3d at p. 858.) Essentially, the inflated payoff demand submitted by appellants claimed that the amount due on the note secured by the Property was $269,500. We agree with LLC's assessment that the payoff demand can reasonably be seen as impacting the vendability of the property. The payoff demand statement's purpose is to set forth the amount required to fully satisfy the obligation secured by the deed of trust on the Property. (Civ. Code, § 2943, subd. (a)(5).) In order to obtain a clear title, future owners of the Property would seek to extinguish the deed of trust. It follows that receiving a payoff demand

statement attesting that $269,500, not the approximately $7,000 actually owed on the note, would impact LLC's ability to sell the Property.[14]

### ii. *Pecuniary Loss*

Appellants' claim that LLC failed to establish that it suffered a direct pecuniary loss from the offensive statement is also without merit. "[T]he law is . . . clear that the expense of legal proceedings necessary to remove the doubt cast by the disparagement and to clear title is a recognized form of pecuniary damage in such cases [citations]. Since California law expressly recognizes that attorney fees and costs are a form of pecuniary damages in slander of title cases, it would seem that in the absence of legal authority to the contrary, such damages are presumptively sufficient to satisfy the pecuniary damage element of the cause of action." (*Sumner Hill*, *supra*, 205 Cal.App.4th at p. 1032, fn. omitted.) Accordingly, LLC sufficiently demonstrated that it suffered a pecuniary loss from the payoff demand.

### b. **Privilege**

Appellants insist that the payoff demand was privileged under Civil Code section 47 and therefore cannot be the basis of the causes of action for slander of title and intentional or negligent interference with a prospective economic advantage.

Civil Code section 47 provides an absolute privilege for certain communications, including those communications made in a judicial or an official proceeding. (Civ. Code, § 47, subd. (b)(2) & (b)(3).) It also provides for a qualified privilege for the "so-called common interest privilege" (*Kachlon v. Markowitz* (2008) 168 Cal.App.4th 316, 336

---

[14] Appellants insist that there was no impact on the vendability of the property, because the evidence in the record shows that LLC could have easily bonded the disputed payoff amount and completed the sale of the property. This argument, however, is without merit. Simply because it is conceivable the sale could have occurred irrespective of the dispute does not mean that the dispute did not harm LLC's ability to sell the property.

(*Kachlon*)), which includes communications that are made "without malice, to a person interested therein, . . . by one who is also interested" (Civ. Code, § 47, subd. (c)(1)).

Civil Code sections 2924 through 2924k govern nonjudicial foreclosures. Civil Code section 2924, subdivision (d)(1) and (d)(2) state that "The mailing, publication, and delivery of notices as required by this section [for nonjudicial foreclosure], and the performance of the procedures set forth in this article" constitute privileged communications under Civil Code section 47. Appellants claim that a payoff demand submitted pursuant to Civil Code section 2943 is a procedure that is "set forth in this article," because it is part of the same article in the Civil Code as section 2924. Therefore, appellants argue that Civil Code section 47 renders the payoff demand absolutely privileged.

We disagree. Civil Code section 2924, subdivision (d) has been construed as granting *conditional* immunity, not absolute immunity. In *Kachlon*, *supra*, 168 Cal.App.4th 316, the appellate court concluded, after an extensive analysis of the legislative history of Civil Code section 2924, that the privilege extended to nonjudicial foreclosures under Civil Code section 2924, subdivision (d) was not the absolute privilege granted to judicial or official proceedings, but the common interest privilege for communications made "without malice, to a person interested therein, . . . by one who is also interested" (Civ. Code, § 47, subd. (c)).

In its decision, *Kachlon* disagreed with *Garretson v. Post* (2007) 156 Cal.App.4th 1508, 1517, which asserted that "Civil Code section 2924, subdivision (c) provides that a creditor's nonjudicial foreclosure activity constitutes privileged communications under the litigation privilege [of Civil Code section 47, subdivision (b)]."

We find the rationale employed by *Kachlon* to be persuasive. Therefore, even if we were to assume that the conditional privilege set forth under Civil Code section 47 applies to payoff demands submitted under Civil Code section 2943, the privilege would

27

not bar LLC's causes of action for slander of title or interference with prospective economic advantage. This is because LLC alleged that appellants submitted the false payoff demand *with malice*, which overcomes the conditional privilege set forth under Civil Code section 47.

6. *Sufficient Evidence of a Violation of Civil Code Section 2943*

Appellants maintain that there is insufficient evidence that they violated Civil Code section 2943, because the payoff demand statement reflected appellants' honest opinion of the amount due on the promissory note.

Civil Code section 2943, subdivision (a)(5) defines a payoff demand statement as follows: "[A] written statement, prepared in response to a written demand made by an entitled person or authorized agent, setting forth the amounts required as of the date of preparation by the beneficiary, to fully satisfy all obligations secured by the loan that is the subject of the payoff demand statement. The written statement shall include information reasonably necessary to calculate the payoff amount on a per diem basis for the period of time, not to exceed 30 days, during which the per diem amount is not changed by the terms of the note."

Civil Code section 2943, subdivision (c) states in pertinent part: "A beneficiary, or his or her authorized agent, shall, on the written demand of an entitled person, or his or her authorized agent, prepare and deliver a payoff demand statement to the person demanding it within 21 days of the receipt of the demand." Subdivision (e)(4) of section 2943 of the Civil Code provides that "[i]f a beneficiary for a period of 21 days after receipt of the written demand willfully fails to prepare and deliver the statement, he or she is liable to the entitled person for all damages which he or she may sustain by reason of the refusal, whether or not actual damages are sustained, he or she shall forfeit to the entitled person the sum of three hundred dollars ($300). . . . For the purposes of

28

this subdivision, 'willfully' means an intentional failure to comply with the requirements of this section without just cause or excuse."

Appellants insist that the plain language of Civil Code section 2943, subdivision (a)(5) indicates that the Legislature intentionally omitted the word "accurate," necessitating only that a payoff demand set forth the amounts "*required . . . to fully satisfy all obligations secured by the loan.*" (Italics added.) Appellants interpret this phrasing as mandating that payoff demand reflect the amount due based on the beneficiary's *opinion*. Accordingly, appellants argue that they did not violate Civil Code section 2943, because the payoff demand reflected their honest opinion of what was owed on the note. Appellants analogize that "[i]t is not embezzlement where a person honestly and in good faith 'believes that he is authorized to appropriate and use property which he is accused of embezzling . . . .' " (*Ferrick v. Santa Clara University* (2014) 231 Cal.App.4th 1337, 1347.)

Assuming that this is true, appellants' argument would still fail. The trial court found that Thomas *knew* the payoff demand he submitted was false. This factual finding is supported by substantial evidence in the record. The court noted that Thomas had acted peculiarly with Mitchell when he purchased the two promissory notes, and Thomas refused to accept documents that detailed the amounts due on the two notes he purchased. The trial court also dismissed Thomas's testimony that he had legitimately believed he had modified the note, because Thomas did not provide written evidence of the modification and did not provide evidence of how the note was modified.

Accordingly, there was sufficient evidence to support the trial court's determination that appellants had violated Civil Code section 2943.

7. *The Alleged Modification of the 2003 Mitchell Note*

Appellants maintain that it was permissible as a matter of law for them to modify the 2003 Mitchell Note, and the note was properly modified. However, we need not

29

determine whether the alleged modification was legally sound, because we find that sufficient evidence supports the trial court's conclusion that no modification was actually made.[15]

The court noted that the only evidence of the modification was introduced by Thomas, and Thomas did not produce the written evidence of the modification. The court did not find Thomas's testimony to be credible, because he did not provide an explanation as to how the note was supposedly modified. The court characterized Thomas's testimony as a "self-serving legal conclusion" that was "entitled to very little weight indeed." The court also remarked that Dennis was not called to testify regarding the alleged modification of the note.

Appellants opine that the trial court improperly shifted the burden of proof by requiring them to prove the existence and validity of a modification, when it should be incumbent on LLC to *disprove* the modification. Evidence Code section 500 provides that "a party has the burden of proof as to each fact the existence or nonexistence of which is essential to the claim for relief or defense that he is asserting." We do not believe that the trial court mischaracterized the burden of proof.

Here, the trial court cited to the fact that the actual written modification was never submitted into evidence by appellants. Under Evidence Code section 412, "[i]f weaker and less satisfactory evidence is offered when it was within the power of the party to produce stronger and more satisfactory evidence, the evidence offered should be viewed with distrust." Since the written modification would have been stronger evidence compared to Thomas's oral testimony, the court properly viewed Thomas's testimony with great distrust, ultimately finding it not to be credible. We must defer to the trial

---

[15] Below, the trial court rejected the propriety of the alleged modification on two grounds, noting that "[a]part from the failure of proof concerning a modification of the note, there is also a failure of logic for this theory."

court's credibility assessment.  (*Lenk v. Total-Western, Inc.* (2001) 89 Cal.App.4th 959, 968 ["we defer to the trier of fact on issues of credibility"].)

LLC also presented evidence tending to disprove the existence of a modification. LLC submitted evidence of Thomas's peculiar statements to Mitchell when he purchased the two notes, including the document attesting that Thomas refused to sign documents confirming the unpaid balance on each of the notes and told Mitchell that he was "not signing them," and that he had "[his] own reasons for not signing them."  Additionally, LLC introduced evidence that Thomas failed to respond to LLC's requests for a clarification or explanation regarding the high payoff demand.  The trial court could reasonably infer from this evidence that Thomas was hiding something and that the payoff demand statement he had submitted on behalf of Devine Blessings was in fact false and not supported by a modification.  "In determining what inferences to draw from the evidence or facts in the case against a party, the trier of fact may consider, among other things, the party's failure to explain or to deny by his testimony such evidence or facts in the case against him, or his willful suppression of evidence relating thereto, if such be the case."  (Evid. Code, § 413.)

Applying the principle that if " 'the evidence gives rise to conflicting reasonable inferences, one of which supports the findings of the trial court, the trial court's finding is conclusive on appeal' " (*Johnson v. Pratt & Whitney Canada, Inc.* (1994) 28 Cal.App.4th 613, 623), we are compelled to find that substantial evidence supports the trial court's factual finding that there was no modification to the note.

8. *Standing*

Appellants claim that LLC lacks standing to pursue its claims.  LLC was formed on March 29, 2010, when the California Secretary of State filed its Articles of Organization.  The foreclosure sale was completed on March 25, 2010, four days prior to LLC's formation.  Yazdani's agent was the successful bidder at the foreclosure sale.

31

Therefore, appellants insist that Yazdani or the Yazdani Family Trust, not LLC, are the "true" beneficial owners of the William Street Property. And appellants maintain that neither Yazdani nor the Yazdani Family Trust assigned the note or the deed of trust to LLC. As a result, appellants claim that LLC cannot pursue any of the causes of action alleged against them.

Below, the trial court rejected appellants' arguments, finding that LLC was specifically formed by Yazdani to take title to the property. Further, on April 12, 2010, the trustee executed the grant deed in LLC's name, which was recorded on May 4, 2010. Based on the foregoing, the trial court concluded that LLC was the owner of the Property and had standing to bring the lawsuit. (See Evid. Code, § 662 ["The owner of the legal title to property is presumed to be the owner of the full beneficial title. This presumption may be rebutted only by clear and convincing proof."].)

Appellants argue that the trial court's finding was erroneous, because it is well established that a foreclosure sale is completed "when the auctioneer's hammer falls," citing to *Ballengee v. Sadlier* (1986) 179 Cal.App.3d 1, 5 (*Ballengee*). Appellants also cite to *Nguyen v. Calhoun* (2003) 105 Cal.App.4th 428, 441 for the proposition that "[a]bsent defects in the foreclosure procedure itself, delivery of the trustee's deed following a foreclosure sale is 'merely a ministerial act.' " As a result, appellants insist that the trustee's issuance of a trustee's deed to LLC was a void act, because LLC was not the final successful bidder at the auction and did not exist at the time the sale was completed.

Appellants also cite to *Ballengee* for the proposition that a trustee owes a fiduciary duty to the trustor and the beneficiary, and therefore any side agreement between the trustor and the beneficiary amounts to a breach of these fiduciary duties under the deed of trust. (*Ballengee*, *supra*, 179 Cal.App.3d at p. 5.) In *Ballengee*, the beneficiary, who had a second position on the property, arranged with his trustee to withhold execution and a

32

deed of trust after the beneficiary had purchased the property at his own trustee's sale. (*Ibid.*) The beneficiary did so in an attempt to circumvent anti-deficiency statutes, because the owners of the first position of the property subsequently conducted its own trustee's sale and took title after its credit bid was the highest offer. The beneficiary thereafter attempted to collect on its promissory note from the owners of the first position of the property. (*Ibid.*)

Appellants' reliance on *Ballengee* and *Nguyen* is not well-founded. Although *Ballengee* stands for the principle that a foreclosure sale is completed when the auction is completed (Civ. Code, § 2924h, subds. (a) & (c)), neither of the cases relied on by appellants stand for the proposition that the highest bidder cannot direct the trustee to give title to a holding company that the highest bidder owns. Furthermore, the side agreement between the beneficiary and the trustee in *Ballengee* to delay execution of a deed of trust is markedly different than what transpired here. Appellants provide no authority for the proposition that the rights of the highest bidder are not transferrable or that the highest bidder must take title to the property only in its own name. As articulated by the trial court, the trustee's deed unequivocally states that LLC took title to the property. And, also noted by the trial court, Yazdani's method of taking title by forming a single-purpose entity, LLC, was not nefarious or unusual. Accordingly, appellants fail to persuade us that LLC lacked standing to pursue its claims.

9. *Mootness of the Declaratory Judgment*

Appellants claim the cause of action for declaratory relief was rendered moot when the payoff demand expired after the sale to the third party was canceled.

Code of Civil Procedure section 1060 provides in pertinent part: "Any person . . . who desires a declaration of his or her rights or duties with respect to another, . . . may, in cases of actual controversy relating to the legal rights and duties of the respective parties, bring an original action . . . in the superior court . . . ." Therefore, " 'declaratory relief is

33

appropriate only where there is an actual controversy, not simply an abstract or academic dispute.' " (*Connerly v. Schwarzenegger* (2007) 146 Cal.App.4th 739, 746.)

Appellants insist that there was no longer any actual controversy, because the payoff demand expired when Yazdani canceled the sale and subsequent escrow. We disagree. The parties were still disputing whether the amount specified in the payoff demand was proper. An actual controversy related to the legal rights and duties of the parties persisted. Accordingly, we do not find that the cause of action for declaratory relief was moot.

10. *Damages*

a. **Failure to Establish Alter Ego**

Appellants also argue the court erred when it found Thomas to be personally liable for damages, because Devine Blessings was the holder of the note and was the entity that issued the payoff demand. Appellants note that LLC stipulated at trial that Devine Blessings alone was responsible for any alleged violation of Civil Code section 2943. Therefore, Devine Blessings alone can be subject to damages, because LLC failed to establish alter ego liability.

We find no merit in defendant's arguments. Thomas can still be personally liable without the establishment of alter ego liability. "Directors and officers of a corporation are not rendered personally liable for its torts merely because of their official positions, but may become liable if they directly ordered, authorized or participated in the tortious conduct. [Citation.] Personal liability, if otherwise justified, may rest upon a 'conspiracy' among the officers and directors to injure third parties through the corporation. [Citations.] Shareholders of a corporation are not normally liable for its torts, but personal liability may attach to them through application of the 'alter ego' doctrine [citation], or when the shareholder specifically directed or authorized the

34

wrongful acts." (*Wyatt v. Union Mortgage Co.* (1979) 24 Cal.3d 773, 785; *Taylor-Rush v. Multitech Corp.* (1990) 217 Cal.App.3d 103, 113.)

This principle has been upheld by our Supreme Court in *Frances T. v. Village Green Owners Assn.* (1986) 42 Cal.3d 490, 504, which found that corporate officers and directors may be "jointly liable with the corporation and may be joined as defendants if they personally directed or participated in the tortious conduct." The Supreme Court further explained that "[t]his liability does not depend on the same grounds as 'piercing the corporate veil,' on account of inadequate capitalization for instance, but rather on the officer or director's personal participation or specific authorization of the tortious act." (*Ibid.*)

The payoff demand statement reflects that Thomas prepared the statement on behalf of Devine Blessings. Thomas also confirmed that he was the sole shareholder of Devine Blessings, and the documents by which Devine Blessings purchased the notes from Mitchell indicated that they were purchased by Thomas, acting as the corporation's responsible officer, director, or managing member. Therefore, we do not find the trial court erred when it determined that Thomas was personally liable for damages, because there was sufficient evidence that he was a shareholder or director that participated in or directed the tortious act.

b. **Failure to Establish Fraud to Warrant Punitive Damages**

Next, appellants argue that the trial court erred in finding that the submission of the inflated payoff demand constituted fraud under Civil Code section 3294, subdivision (c)(3). Appellants insist the elements of scienter, reliance, and injury are not present.

Civil Code section 3294 authorizes punitive damages in certain actions. It is *not* an independent cause of action for fraud. Civil Code section 3294, subdivision (c)(3) specifically defines fraud as an "intentional misrepresentation, deceit, or concealment of

35

a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury." The requisite inquiry is thus whether there was sufficient evidence that supports the conclusion that (1) Thomas intentionally represented the payoff demand and (2) did so with the intent to deprive LLC of property or legal rights.

Below, the trial court found by clear and convincing evidence that appellants' acts were fraudulent within the meaning of Civil Code section 3294, subdivision (c)(3). Substantial evidence supports the trial court's conclusion.[16]

First, there was evidence that appellants *knew* that the payoff demand was higher than what was supposedly owed. There was evidence that Thomas refused to accept documentation from Mitchell that would have clarified the amount due on each of the notes he had purchased. He also refused to sign documents that would have confirmed the remaining balance. The trial court dismissed appellants' claim that the payoff demand was based on appellants' reasonable belief that the note had been modified, and found instead that there was no basis to conclude that the note had been modified in the first place.

Furthermore, there is evidence that LLC relied on the payoff demand. LLC canceled the sale to the third party when it could not obtain a clear response from appellants about what was owed on the note. There is also evidence of pecuniary harm, because LLC suffered monetary losses from the cancellation of the sale and was required to engage in litigation to determine the actual amount due on the note.

---

[16] As noted in *In re Marriage of Murray* (2002) 101 Cal.App.4th 581, although the trial court had to find below that fraud was established by clear and convincing evidence, "the burden of proof at the trial level does not affect the nature of our review." (*Id*. at p. 601.)

For the foregoing reasons, we conclude that substantial evidence supports the court's finding of fraud under Civil Code section 3294, subdivision (c)(3).

c. **Punitive Damages Award was not Excessive**

Appellants claim that the punitive damages award was excessive, "a result of the trial court's passion and prejudice against the Appellants, and not rationally related to the with [*sic*] Appellants' financial condition nor their conduct, nor consistent with the 'clear and convincing' burden of proof." Appellants posits that much of the punitive damages award is attributable to the improper "character evidence" submitted by Hansen during the court trial.

"[A]n appellate court may reverse [an award of punitive damages] 'only " '[w]hen the award as a matter of law appears excessive, or where the recovery is so grossly disproportionate as to raise a presumption that it is the result of passion or prejudice.' " ' " (*Neal v. Farmers Ins. Exchange* (1978) 21 Cal.3d 910, 928.)

"In determining whether a punitive damages award is excessive, the Supreme Court has set forth three factors to guide us: (1) the reprehensibility of the defendant's conduct; (2) the actual harm suffered; and (3) the wealth of the defendant. [Citation.] An award that is reasonable in light of the first two factors may nevertheless be so disproportionate to the defendant's ability to pay that the award is excessive for that reason alone. [Citation.] Where the award is grossly disproportionate to the defendant's wealth, a presumption arises that the [trier of fact] was influenced by passion and prejudice." (*Zaxis Wireless Communications, Inc. v. Motor Sound Corp.* (2001) 89 Cal.App.4th 577, 581-582.)

We "review the award de novo, making an independent assessment of the reprehensibility of the defendant's conduct, the relationship between the award and the harm done to the plaintiff, and the relationship between the award and civil penalties authorized for comparable conduct. [Citation.] This '[e]xacting appellate review' is

37

intended to ensure punitive damages are the product of the ' " 'application of law, rather than a decisionmaker's caprice.' " ' " (*Simon v. San Paolo U.S. Holding Co., Inc.* (2005) 35 Cal.4th 1159, 1172.) "On the other hand, findings of historical fact made in the trial court are still entitled to the ordinary measure of appellate deference." (*Ibid.*)

### i. *Reprehensibility*

In *State Farm Mut. Automobile Ins. Co. v. Campbell* (2003) 538 U.S. 408, the Supreme Court stated: " '[T]he most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct.' [Citation.] We have instructed courts to determine the reprehensibility of a defendant by considering whether: the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident. [Citation.] The existence of any one of these factors weighing in favor of a plaintiff may not be sufficient to sustain a punitive damages award; and the absence of all of them renders any award suspect. It should be presumed [that] a plaintiff has been made whole for his injuries by compensatory damages, so punitive damages should only be awarded if the defendant's culpability, after having paid compensatory damages, is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence." (*Id.* at p. 419.)

We find that most of the factors articulated by *Campbell* weigh against a finding that the appellants' actions were particularly reprehensible. First, the harm caused was purely economic. And the tortious conduct did not manifest an indifference toward the health or safety of others, nor was there evidence indicating that LLC was financially vulnerable. Appellants' submission of the inflated payoff demand was not part of a pattern of repetitious conduct and was more akin to an isolated incident. There is,

however, one factor weighing in favor of finding that the action was reprehensible:  the harm was the result of intentional, fraudulent conduct.  Weighing these considerations together, we do not find that appellants' actions were extremely reprehensible.

### ii. *Ratio Between Harm Suffered and the Punitive Damages*

" 'Our jurisprudence and the principles it has now established demonstrate . . . that, in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process.  In [*Pacific Mutual Life Insurance Co*. *v*. *Haslip* (1991) 499 U.S. 1], in upholding a punitive damages award, we concluded that an award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety.' " (*Jet Source Charter*, *Inc*. *v*. *Doherty* (2007) 148 Cal.App.4th 1, 9.)

The punitive damages are not grossly disproportionate to the compensatory damages, because they are approximately equal to each other.  (*Simon v*. *San Paolo U.S. Holding Co*., *Inc*., *supra*, 35 Cal.4th at p. 1183 [punitive damage award that was 340 times the amount of compensatory damages was grossly excessive].)  This one-to-one ratio seems appropriate, given our previous conclusion that appellants' actions were not particularly reprehensible.

### iii. *Appellants' Wealth*

Additionally, even if the award is not entirely unreasonable, "the award can be so disproportionate to the defendant's ability to pay that the award is excessive *for that reason alone*." (*Adams v*. *Murakami* (1991) 54 Cal.3d 105, 111.)  "[A] defendant's ability to pay a punitive damage award must be based on meaningful and substantial evidence of his or her financial condition.  [Citations.]  A defendant's 'net worth' is the critical determinant of financial condition, but there is no rigid formula and other factors may be dispositive especially when net worth is manipulated and fails to reflect actual wealth.  [Citations.]  The purpose of punitive damages 'is not served by financially

destroying a defendant. The purpose is to deter, not to destroy.' [Citation.] In all cases, the plaintiff has the burden of proving the financial condition of the defendant." (*County of San Bernardino v. Walsh* (2007) 158 Cal.App.4th 533, 546 (*Walsh*).)

In *Walsh*, the defendants challenged the award of punitive damages as excessive, arguing that they lacked the financial resources to pay the award. (*Walsh*, *supra*, 158 Cal.App.4th at pp. 545-546.) However, the trial court found that defendants had " 'systematically and deceitfully manipulated and concealed [their] ill-gotten gains and [their] net worth,' and 'provided knowingly false testimony' at trial concerning the extent of the wealth they obtained from the bribery scheme." (*Id.* at p. 546.) Therefore, the appellate court noted that the defendants' conduct gave the court "wide latitude to make inferences from the evidence unfavorable to [them]." (*Id.* at p. 547.)

The trial court determined that Thomas, like the *Walsh* defendants, was evasive during the hearing on punitive damages. The court also did not find him to be credible. For example, the court noted that Thomas testified during the hearing that Devine Blessings did not have a bank account until June 2013. Thomas further claimed that he had a monthly income of $11,000. However, Thomas's bank statements showed monthly transactions "consistently in excess" of $11,000, sometimes "very substantially in excess" of $11,000. The court concluded that, based on these inconsistencies, it believed that appellants had withheld information and had not provided sufficient disclosure of their finances.

The trial court also pointed out that Thomas claimed no ownership in real property. Yet, there was evidence in the record that Thomas was a beneficiary of his deceased mother's trust, which included parcels of real property. Thomas had previously submitted a petition to move a property into the trust where he claimed that he, and his mother's other two sons, were the beneficiaries. However, Thomas had previously provided contradictory information before a federal court where he disclaimed all interest

40

in the trust, which appellants' counsel attempted to explain by arguing that the petition to move real property was not reliable because it "was taken off calendar and the Court never relied on it."

Additionally, Thomas had previously taken out $200,000 in real property equity from the trust. Thomas later asserted that the $200,000 was a loan from the trust to Devine Blessings. However, nothing in the record supported Thomas's claim that the money was a loan, and the trust had assets estimated to be worth approximately $2.5 million.

Based on the evidence presented during the hearing on punitive damages, the trial court did not err when it inferred that appellants were deceptive, had withheld complete documentation of their finances, and had more assets than they claimed. (*Walsh*, *supra*, 158 Cal.App.4th at p. 547.) Therefore, we cannot conclude that under these circumstances the punitive damages award was so disproportionate to appellants' wealth to render it excessive, exceeding what was necessary to properly punish and deter.

### iv.    *Punitive Damages was Not Excessive*

Although we do not find that the actions of appellants were extremely reprehensible, the amount of punitive damages awarded was proportionate to the actual harm suffered. Further, the award was not disproportionate compared to the appellants' ability to pay. Considering all the applicable factors, we do not believe the punitive damages award was excessive as a matter of law and exceeded that necessary to properly punish and deter.

### 11. *Conveyance of the Deed of Trust*

Lastly, appellants argue that the trial court exceeded its jurisdiction when it ordered appellants to reconvey the deed of trust, because LLC did not pray for this relief in its complaint. We find no merit in this contention.

41

"[I]t is fundamental that after [a] trial on the merits, the court may afford any form of relief supported by the evidence and as to which the parties were on notice, whether requested in the pleadings or not." (*American Motorists Ins. Co. v. Cowan* (1982) 127 Cal.App.3d 875, 883; Code Civ. Proc., § 580.) Appellants had ample notice that LLC sought an order from the court directing appellants to reconvey their interest in the Property. Although this specific relief was not included in the prayer of LLC's complaint, it was contained within the allegations of the first cause of action for declaratory relief.[17]

Additionally, appellants have not met their burden to show they were prejudiced by the trial court's actions. (Code Civ. Proc., § 475 [judgment will not be reversed absent a showing of prejudice]; *Kurinij v. Hanna & Morton* (1997) 55 Cal.App.4th 853, 865 [appellant bears the burden to demonstrate existence of prejudicial error].) Here, appellants were awarded $7,152.03, the amount that was determined to be due on the promissory note secured by the deed of trust on the Property.

Civil Code section 2941 provides that once an obligation secured by a deed of trust is satisfied, the lender or beneficiary *must* initiate the process to reconvey title to the debtor or trustor. Civil Code section 2941, subdivision (b)(1) provides that "[w]ithin 30 calendar days after the obligation secured by any deed of trust has been satisfied, the beneficiary or the assignee of the beneficiary shall execute and deliver to the trustee the original note, deed of trust, request for a full reconveyance, and other documents as may be necessary to reconvey, or cause to be reconveyed, the deed of trust."

Additionally, once the trustee receives the necessary documentation it must begin the process to reconvey the deed of trust. Civil Code section 2941, subdivision (b)(1)(A) provides that "[t]he trustee shall execute the full reconveyance and shall record or cause it

---

[17] LLC also prayed for "such other and further relief as the court may deem jus[t] and proper" on all of its causes of action in its second amended complaint.

42

to be recorded in the office of the county recorder in which the deed of trust is recorded within 21 calendar days after receipt by the trustee of the original note, deed of trust, request for a full reconveyance, the fee that may be charged pursuant to subdivision (e), recorder's fees, and other documents as may be necessary to reconvey, or cause to be reconveyed, the deed of trust."

Therefore, once an obligation securing the deed of trust is satisfied, the lender or beneficiary is *required* to send the trustee the documents necessary to reconvey the deed of trust. Upon receipt of the documentation, the trustee is *required* to execute the reconveyance and record it. Based on the foregoing, appellants have not met their burden to show that they were prejudiced by the trial court's order directing reconveyance of the deed of trust, because reconveyance was required once the obligation was satisfied.

## DISPOSITION

The judgment is affirmed. 167 E. William, LLC is entitled to its costs on appeal.

_____
Premo, J.

WE CONCUR:


_____
Rushing, P.J.




_____
Márquez, J.